UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BERKSHIRE BANK, | ) |
|     Plaintiff | ) |
| | ) |
|               v. | ) C.A. NO. 10-cv-30198-MAP |
| | ) |
| TOWN OF LUDLOW, | ) |
| ET AL., | ) |
|     Defendants | ) |

## MEMORANDUM AND ORDER REGARDING DEFENDANT UNITED STATES' MOTION FOR SUMMARY JUDGMENT
(Dkt. No. 33)

March 29, 2012

PONSOR, U.S.D.J.

### I. INTRODUCTION

This interpleader action involves a dispute over the remains of a failed real estate development in Ludlow, Massachusetts called Leland Estates. The development was foreclosed on by its mortgagee, Plaintiff Berkshire Bank, but the foreclosure sale left excess proceeds of $92,703.94. Plaintiff does not claim any right to these funds, and this action seeks an adjudication of the competing claims of the United States of America and the Town of Ludlow, each of whom asserts entitlement to them. Cross-claimant United

States has moved for summary judgment. (Dkt. No. 33). For the reasons set forth below, the court will allow the motion.

## II. FACTUAL BACKGROUND

Leland Estates was the brainchild of William Livermore, the principal and sole member of WAL Development ("WAL"). Beginning at least as early as 2006 both Livermore and WAL were running into financial problems. The exact sequence of claims and liens by the United States against Livermore, and by Ludlow against WAL, is confusing but, in the end, of only peripheral relevance. Counsel for Ludlow conceded at oral argument that it was <u>not</u> contesting the United States' entitlement to the excess proceeds based on either the sequence of the assessments or when the liens were filed with the Registry of Deeds. As will be seen below, Ludlow's argument relies solely upon its contention that the claim of the United States against Livermore may not be satisfied against proceeds of the WAL foreclosure, since the two are distinct entities.

The basic underlying chronology unfolded as follows. The Internal Revenue Service ("IRS") assessed Livermore with

back taxes owed for 2006 on November 5, 2007 and March 8, 2010 in the amount of $38,649.22. (Dkt. No. 33, Ex. 31.) It assessed him for 2007 back taxes owed on June 9, 2008, June 16, 2008, and March 8, 2010 in the amount of $30,626.62. (Id.) The IRS made an additional assessment for 2008 back taxes of $43,149.85 on November 23, 2009 and March 8, 2010. (Dkt. No. 33, Ex. 31.) The total tax assessments of the United States obviously exceed the $92,703.94 remaining after Berkshire Bank's foreclosure upon WAL. The Town of Ludlow, for its part, obtained judgment against WAL on June 28, 2010 for $135,000 based on a failure by WAL to satisfy a covenant with the town to secure the full development of the Leland Estates property. (Dkt No. 33, Ex. 27.) Again, the town's claim exceeds the funds left over from the foreclosure. The question before the court, therefore, is: who gets the money, the United States or Ludlow?[1]

### III. DISCUSSION

The United States can collect on tax liens from a

---

[1] Cross-defendant Sirok & Son also obtained a security interest over WAL Development, LLC. However, it has not opposed the motion of the United States for summary judgment, in effect conceding the United States' entitlement to the excess foreclosure proceeds.

taxpayer who holds property in the name of another entity on either of two theories, the "nominee" theory and the "alter ego" theory.

> While related, the concepts of "nominee" . . . and "alter ego" are independent bases for attaching the property of a third party in satisfaction of a delinquent taxpayer's liability. A nominee theory involves the determination of the true beneficial ownership of property. An alter ego theory focuses more on those facts associated with a "piercing of the corporate veil" analysis.

Oxford Capital Corp. v. United States, 211 F.3d 280, 284 (5th Cir. 2000). In practice, the distinction between the two theories is minimal, and courts often merge the analysis of whether an entity is a taxpayer's nominee or alter ego into a single question. Baum Hydraulics Corp. v. United States, 280 F. Supp. 2d 910, 917 (D. Neb. 2003) ("[The C]ourt's review of the case law and secondary authorities elicits no significant practical differences between the terms 'nominee' and 'alter ego'"); see also Macklin v. United States, 300 F.3d 814, 818 n.2 (7th Cir. 2002) (merging the definitions of "nominee" and "alter ego").

In this case, the United States could probably reach WAL to satisfy its claims against Livermore under either theory. Given that WAL is so manifestly Livermore's

4

nominee, however, it will not be necessary to address the alter ego theory.

In determining whether an entity is a taxpayer's nominee, courts may consider the following factors: (1) the lack of consideration paid by the titleholder; (2) the close relationship between the taxpayer and the titleholder; (3) the control exercised over the property by the taxpayer while the title is held by another; (4) the use and enjoyment by the taxpayer of the property titled to another; (5) the lack of interference in a taxpayer's personal expenses; (6) the exercise of dominion and control over the property; and (7) whether title was placed in the record owner's name as a result of or in anticipation of the taxpayer's liability. In re Callahan, 442 B.R. 1, 6 n.5 (D. Mass. 2010) (citing Oxford Capital, 211 F.3d at 281 n.1); see also Wellington Condo. Trust v. Pino, 686 F. Supp. 2d. 117, 121-22 (D. Mass. 2010).

The undisputed facts show that the majority of these factors apply to Livermore's relationship with WAL Development. Livermore began the development of Leland Estates in his own name. However, in order to acquire

limited liability protection from future lawsuits, he created WAL Development, LLC, a Massachusetts limited liability company of which he was the sole member. (Dkt. No. 33, Ex. 1 Livermore Dep. at 34:19-36:10.) After forming WAL, Livermore transferred his interest in the real estate to the company for no consideration, and he continued to develop the property exactly as he had before. Indeed, he personally guaranteed the mortgage WAL gave to Berkshire Bank to finance construction. The record contains no indication that WAL was anything more than a vehicle to provide Livermore with limited liability.

Some factors do tip in Ludlow's favor. It is true that WAL appears to have observed the minimal corporate formalities required of limited liability companies under Massachusetts state law. For example, it filed reports with the Secretary of State and income tax returns with the IRS, and it kept records of corporate actions. Livermore maintained a separate checking account for the company. The deed recording the transfer of the real estate to WAL was properly recorded.

Despite these straws, the factors favoring a finding

that WAL was Livermore's nominee substantially predominate. The overwhelming weight of the evidence in the record establishes beyond doubt that WAL's interest in Leland Estates was merely Livermore's in another name. In short, WAL was, as a matter of law, Livermore's nominee.

The Town of Ludlow suggests that a factual dispute exists regarding the relationship between Livermore and WAL, making summary judgment inappropriate. However, it has not been able to identify any determinative issue of disputed fact that would require resolution by a factfinder. <u>J. Geils Band Emp. Ben. Plan v. Smith Barney Shearson, Inc.</u>, 76 F.3d 1245, 1250 (1st Cir. 1996) ("[T]he nonmovant bears the burden of placing at least one material fact into dispute once the moving party offers evidence of the absence of a genuine issue."(citations omitted)).

## IV. CONCLUSION

The court takes very little pleasure in this ruling, which leaves Ludlow with an unfinished subdivision. Unfortunately for the town, the law gives the United States priority access to the funds at issue.

For the reasons set forth above, the motion for summary

7

judgment of the United States of America (Dkt No. 33) is hereby ALLOWED.  The clerk will enter an appropriate judgment.  The funds in question will be released to the United States within thirty days of this memorandum, unless a notice of appeal is filed.

This case may now be closed.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge